986 F.2d 1413
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Bernard FIELDS, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, United
States Department of Labor; B. E. Voultsides, District
Director, Office of Workers' Compensation Programs,
Longshore Division, United States Department of Labor;
Newport News Shipbuilding and Dry Dock Company, Respondents.
 No. 92-1823.
 United States Court of Appeals,
Fourth Circuit.
 Argued: December 1, 1992
Decided: February 23, 1993
 
 On Petition for Review of an Order of the Benefits Review Board. (90-391)
 Argued: Sherman Carl Smith, Newport News, Virginia, for Petitioner.
 Lawrence Phillip Postol, Seyfarth, Shaw, Fairweather & Geraldson, Washington, D.C., for Respondents.
 On Brief: Carol DeDeo, Office of Workers' Compensation Programs, Michael John Denney, Office of the Solicitor, United States Department of Labor, Washington, D.C., for Respondent Director.
 Ben.Rev.Bd.
 AFFIRMED.
 Before WIDENER and PHILLIPS, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 After an unappealed decision by ALJ Theodor von Brand denying Bernard Fields's request for workers' compensation benefits because he was not disabled, Fields petitioned for a modification of the decision under 33 U.S.C. § 922 (§ 22 of the Longshore and Harbor Workers' Compensation Act). ALJ Michael Lesniak denied the petition, the Benefits Review Board affirmed, and Fields appeals. Because ALJ Lesniak's decision was supported by substantial evidence, we affirm.
 
 
 2
 Fields began working for Newport News Shipbuilding and Dry Dock Company in October 1979. He was injured on July 10, 1980, when a steel beam struck his left shoulder. He continued to work for Newport News, performing light duty until September 1983. He was then discharged for having stated on his employment application that he had never received compensation for an injury, when, in fact, he had sustained back injuries while working for two former employers, one of whom had compensated Fields for over ten months.
 
 
 3
 Two months after his discharge, Fields applied for workers' compensation benefits, claiming permanent disability from the 1980 accident. In May 1984 ALJ von Brand rejected the application, finding that Fields suffered from no physical or psychological ailment that qualified as a permanent disability. The ALJ found that Fields's "testimony that he is disabled by pain is not persuasive since the record indicates that he has no physical impairment." The ALJ concluded, however, that Fields suffered from work-related depression, a psychological condition that impaired but did not disable him, and ordered Newport News to provide medical treatment. Neither party appealed the May 1984 decision.
 
 
 4
 In November 1984 Fields petitioned for benefits under 33 U.S.C. § 922, which authorizes a compensation award following a claim rejection if the claimant proves that, in the time between the rejection and the modification request, he has become disabled from the injury. Rizzi v. Four Boro Contracting Corp., 1 Ben. Rev. Bd. Serv. (MB) 130, 132-33 (1974). Fields alleged that his pain had worsened, making him disabled. See 33 U.S.C. § 902(10) (defining "disability" as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment"); Fleetwood v. Newport News Shipbuilding & Dry Dock Co., 776 F.2d 1225, 1227 n.2 (4th Cir. 1985). In January 1990, after a hearing, ALJ Lesniak denied Fields's petition. In September 1991 the Benefits Review Board affirmed, holding that the ALJ's decision was supported by substantial evidence. One month later Fields asked the Review Board to reconsider its decision, noting that on June 28, 1989, a Social Security Administration ALJ had found Fields disabled. The Review Board denied Fields's motion for reconsideration. On appeal to this court, Fields claims that ALJ Lesniak's decision was not supported by substantial evidence. See 33 U.S.C. § 921(b)(3); Newport News Shipping & Dry Dock v. Director, Office of Workers' Compensation Programs (Hess), 681 F.2d 938, 941 (4th Cir. 1982). We disagree.
 
 
 5
 Shortly before the May 1984 denial of compensation, Fields came under the care of Dr. John Barnard, a psychiatrist, who provided treatment until he retired in 1988. Fields was then referred to another psychiatrist, Dr. Douglas Chessen. Dr. Chessen's psychologist colleague, Dr. Thomas Irwin, also examined Fields. Finally, Dr. Patrick Thrasher, a psychiatrist employed by Newport News to examine Fields, interviewed the claimant twice.
 
 
 6
 The examination records from these doctors are consistent. Over the years, Drs. Barnard, Chessen, and Irwin have expressed incredulity at the pain Fields claims to experience. They noted that Fields's examinations revealed no physical changes, such as muscle atrophy, that one would normally expect from a patient experiencing pain from organic causes. Although they found that Fields suffered from depression, anxiety, and possibly a learning disorder, they did not find that these psychological limitations prevented him from working. Rather, Dr. Barnard testified by deposition that "activity would be good for Bernard Fields" and "activity will not exacerbate his pain." The doctors explained Fields's complaints of pain and his nonemployment on the grounds that he "seems to have no intentions of working" (Barnard, Aug. 12, 1987), "remains convinced that he is unable to work" (Chessen, Oct. 25, 1988), "is undoubtedly convinced of his own inability to sustain gainful employment" (Irwin, Oct. 25, 1988). Dr. Thrasher agreed, finding no disability. Although he found that Fields suffered from somatiform pain disorder, atypical depression, and passive-aggressive personality disorder, he concluded that these conditions neither resulted from the accident nor prevented Fields from working. Dr. Thrasher testified in his deposition that Fields "appeared physically capable of working. He showed no neurological deficits. He had no limitation of his capacity to understand work, how to perform a job."
 
 
 7
 In finding Fields able to work, the ALJ credited the examination notes of all four doctors and the testimony of the two doctors who were deposed, Barnard and Thrasher. He discredited only two items of evidence: Fields's testimony that his pain had worsened and application forms for public assistance completed by Dr. Barnard for Fields between April 1984 and November 1988. In the April 1984 form Dr. Barnard wrote that Fields was not permanently and totally disabled, but beginning with the September 1984 form, he stated the opposite. This information directly contradicts the doctor's deposition testimony and his many examination notes, none of which reports that Fields was unable to work. In his November 1984 notes, Dr. Barnard wrote that Fields showed "no objective signs" explaining his pain. In his January 1986 notes, Dr. Barnard reported that Fields "shows little change." Furthermore, Dr. Barnard characterized the little change that had occurred as "progress," not deterioration. According to the doctor's April 1986 notes, Fields felt he could return to his old job and that work "would take his mind off of his pain." In May 1986 Dr. Barnard reported that Fields "seems to have been completely unchanged in the last several years." In July 1987 he wrote: "It is more and more evident as time goes on that Mr. Fields probably has suffered very little, if any, permanent nerve damage.... [T]here is no evidence of atrophy of any of the muscles." In his August 1987 notes Dr. Barnard stated that Fields's pain "could not be on an organic basis, or else it would diminish, at least to some extent." Dr. Barnard did not conclude that Fields was unable to work, but that he "seems to have no intentions whatsoever of working." Because the information Dr. Barnard provided in the public assistance forms conflicted with his own examination notes and his deposition testimony, the ALJ's decision to discredit the information in the forms was not "inherently incredible or patently unreasonable." Cordero v. Triple A Mach. Shop, 580 F.2d 1331, 1335 (9th Cir. 1978) (quotation omitted), cert. denied, 440 U.S. 911 (1979); see also Richardson v. Perales, 402 U.S. 389, 402 (1971) (holding that medical testimony was substantial evidence for administrative finding of nondisability, despite presence of opposing medical testimony and claimant's testimony).
 
 
 8
 The medical evidence provided in the examination notes of all four doctors and in the deposition testimony of Drs. Barnard and Thrasher constituted more than substantial evidence to support ALJ Lesniak's finding that Fields's impairment in May 1984 did not deteriorate into a disability by November of that year.*
 
 
 9
 Accordingly, we affirm.
 
 AFFIRMED
 
 
 *
 The June 1989 decision by a Social Security Administration ALJ that Fields was disabled does not alter our view. In the first place, evidence of that decision was not in the record before ALJ Lesniak or the Review Board; even now the decision is not in the record we review. Moreover, the SSA ALJ's decision was not probative of whether Fields's condition had changed so as to merit an award under the Longshore Workers' Act. The two ALJs may have had before them different evidence, or they may have considered the same evidence but weighed it differently; in addition, the SSA and the Longshore Workers' Act contain different definitions of "disability." Compare 20 C.F.R. §§ 404.1505-404.1511 with 33 U.S.C. § 902(10). See 20 C.F.R. 404.1504; New Orleans (Gulfwide) Stevedores v. Turner, 661 F.2d 1031, 1043 n.15 (5th Cir. 1981); Air Am. Inc. v. Director, Office of Workers' Compensation Programs, 597 F.2d 773, 780-81 (1st Cir. 1979)